UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **BENNIE R. ABERCROMBIE, on behalf of himself and others similarly situated** | * | **CIVIL ACTION NO. 15-2214** |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **ROGERS, CARTER, & PAYNE, LLC** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a motion for class certification and appointment of class counsel [doc. # 29] filed by plaintiff Bennie R. Abercrombie.  For reasons detailed below, it is recommended that the instant complaint be dismissed, without prejudice, for lack of subject matter jurisdiction, and that the motion for class certification and appointment of class counsel be denied, as moot.

<u>Background</u>

On August 19, 2015, Bennie R. Abercrombie filed the instant putative class action against Rogers, Carter, & Payne, LLC ("RCP") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.  Abercrombie alleges that he is a consumer, as defined by 15 U.S.C. § 1692a(3), who owes (or owed) a debt to First Heritage Credit of Louisiana, LLC ("First Heritage").  Furthermore, RCP is a debt collector, as defined by 15 U.S.C. § 1692a(6), hired by First Heritage to collect the debt from plaintiff.

To that end, on, or about June 8, 2015, RCP sent a written communication to Abercrombie, advising him that he had a "past-due balance of $296.00," and that RCP had been

retained to pursue collection on the account. The communication further stated that,

> [t]he Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter. If you do not dispute the debt within that thirty (30) day period, it will be assumed to be valid. The law also entitles you to request we provide you the name of the original creditor, if the original creditor is different from the current creditor. If you choose to dispute the debt, or any portion thereof, or if you choose to request the name of the original creditor, you must notify this office in writing within thirty (30) days of the date you receive this letter.

(Compl., ¶ 27, Exh. A).

Plaintiff contends that the June 8, 2015, communication violated 15 U.S.C. § 1692g(a)(3) by incorrectly advising him that, unless he timely disputed the debt, it would be assumed to be valid – *generally* – without specifying that it would be assumed to be valid *only by the debt collector*. *Id*., ¶¶ 29-32. He further argues that the June 8, 2015, communication also violated 15 U.S.C. § 1692g(a)(3) by incorrectly informing him that, if he chose to dispute the debt, he "must notify this office *in writing* within thirty (30) days of the date you receive this letter." (Compl., ¶ 33, Exh. A).

Plaintiff further alleges that the same inaccurate recitation of his § 1692g(a)(3) rights within RCP's communication, also constitutes "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" as prohibited by 15 U.S.C. § 1692e(10). *See* Compl., ¶¶ 43-50.

Finally, Abercrombie asserts that, because RCP used a form template for the June 8, 2015, communication, there necessarily exist other similarly situated persons who received communications from RCP that suffer the same deficiencies identified by plaintiff. (Compl., ¶ 35). Accordingly, Abercrombie seeks to recover an award of statutory damages on behalf of himself and a class of similarly situated persons, plus attorney's fees, costs, and interest. He also

seeks an order enjoining RCP from future violations of the FDCPA.

On March 24, 2016, plaintiff filed the instant motion for class certification and appointment of class counsel. The motion is opposed. [doc. # 31].

On June 3, 2016, the court reviewed the complaint and noted that it did not appear to include any allegations that plaintiff suffered actual injury as a result of the alleged misstatements set forth in RCP's communication. (June 3, 2016, Order [doc. # 35]). Accordingly, the undersigned ordered plaintiff: 1) to clarify the nature and extent of his concrete and particularized injury, via affidavit; and 2) to file a brief addressing the effect of *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016), on existing case law, if any, and whether the definition of the proposed class needed to be modified in conformity therewith. [doc. # 35]. The court also authorized defendant to file a response. *Id*.

On June 5, 2016, plaintiff filed his response, together with a declaration made under penalty of perjury, in which he stated that he received and read the June 8, 2015, letter from RCP, before forwarding it to his attorney who was helping him with certain debts that he owed. (Abercrombie Decl.; Pl. Response, Exh. A [doc. # 38]). He explained his injury, as follows,

> 10. The law requires Rogers, Carter, & Payne, LLC to provide certain information to me about rights that I have regarding the debt it said that I owed, so that I could make an informed decision about how to respond to its letter within the time allowed.
>
> 11. My understanding is that the disclosures in the June 8, 2015, letter do not comply with the Fair Debt Collection Practices Act.
>
> 12. Since I was never properly informed of my rights, I wasn't told by Rogers, Carter & Payne, LLC all of the correct options that the law provided me with regard to the debt.
>
> 13. I later learned that the information provided to me by Rogers, Carter & Payne, LLC was not accurate.

   14.  My understanding is that there are many more people out there who were provided the same letter from Rogers, Carter & Payne, LLC but who probably do not even know that they were given misinformation about their rights under the law.

*Id*.

On July 1, 2016, RCP filed its opposition to plaintiff's response. [doc. # 42]. Plaintiff subsequently filed notices of supplemental authority, to which defendant responded. [doc. #s 43, 51-53]. The matter is ripe.

## Analysis

**I. Subject Matter Jurisdiction**

 a) <u>General Principles</u>

As courts of limited jurisdiction, the federal courts may exercise only that authority bestowed upon them by the Constitution and the Congress. *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981). The United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir.2005) (citing U.S. CONST. ART. III, § 2). To give meaning to the Constitution's "case or controversy" requirement, the courts have developed "justiciability doctrines," – one of which is standing, the principle at issue here. *See United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir.2000); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130 (1992). Because standing is a necessary component of federal subject matter jurisdiction, it may be raised at any time by a party or the court. *Sample, supra* (citation omitted). Indeed, standing is a threshold issue that must be satisfied before the court may consider class certification. *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir.2001) (*citing Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir.1981)); *Rivera v. Wyeth Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir.2002)

(standing must be addressed even under the limits of a Rule 23(f) appeal).

      b)      Standing and *Spokeo*

Standing is comprised of three essential elements. *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (internal citations omitted).

At issue in this case is the injury-in-fact element, which requires plaintiff to show that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (*citing Lujan*, 504 U.S., at 560, 112 S.Ct. 2130). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*.

The "concrete" requirement is distinct from the "particularized" requirement. *Spokeo, supra*. To be "concrete," the injury must be "*de facto*," that is, it must actually exist. *Id*. "Concrete" injuries can be tangible or intangible. *Id*. Both history and the judgment of Congress play important roles in determining whether an intangible harm constitutes injury in fact. *Id*. Although Congress "may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," that does not mean that a "plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*.

Thus, Article III's injury-in-fact requirement is not satisfied by plaintiff's allegation that he suffered a "bare procedural violation, divorced from any concrete harm." *Id*. On the other hand, in some circumstances, injury in fact may be satisfied where the plaintiff faces the risk of real harm as a result of the violation of a procedural right granted by statute. *See Spokeo, supra*.

In *Spokeo*, the Supreme Court observed that, by enacting the Fair Credit Reporting Act ("FCRA"), Congress clearly sought to curb the dissemination of false information by adopting procedures to decrease the risk. *Spokeo, supra*. However, a violation of one of the FCRA's procedural requirements may result in no harm. *Id*. The Court gave two examples: 1) a consumer agency that fails to provide required notice to a user, but the information is entirely accurate, and 2) a consumer reporting agency provides inaccurate information such as an incorrect zip code, that, without more, proves difficult to imagine how it could work any concrete harm. *Id*.

    c)    <u>The FDCPA and Plaintiff's "Injury"</u>

In enacting the FDCPA, Congress was motivated by "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Thus, the stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

As discussed above, plaintiff alleges that RCP violated his right under § 1692g(a)(3) to

6

be advised that, unless he timely disputed the debt, it would be assumed to be valid *by the debt collector*, and that he could so dispute the debt, in writing *or otherwise*.[1] The court observes, however, that the validation of debts provision in § 1692g is intended to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Jackson v. Abendroth & Russell, P.C.*, 16-0113, 2016 WL 4942074, at *6 (S.D. Iowa Sept. 12, 2016) (citing S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).

Here, as in *Jackson v. Abendroth & Russell, P.C.*, Abercrombie does not indicate that he ever intended to dispute the debt in any way. *See Jackson, supra.* He does not contest the validity of the debt or the amount listed on the letter. He also does not dispute the identity of the creditor. Further, although the *risk* of real harm, such as confusion or misapprehension as to rights, may satisfy the concreteness requirement, Abercrombie has not alleged that he ever intended to validate his debt, or harbored any potential basis to dispute it.[2] In short, he does not assert that RCP's alleged § 1692g disclosure violations caused him to suffer any concrete harm (or a risk of harm) that the § 1692g requirements were designed to protect against – i.e., incorrectly dunning him or attempted to collect on a paid debt. As the Supreme Court aptly remarked in the context of the FCRA, "a violation of . . . procedural requirements may result in

---

[1] As stated earlier, plaintiff also asserts that RCP violated § 1692e(10) by using false representation or deceptive means to collect a debt. However, the § 1692e(10) claim is premised upon RCP's alleged misstatement of rights under § 1692g. Thus, the two claims share the same fate.

[2] In any event, Abercrombie apparently was not at risk of confusion or misapprehension of rights from the allegedly deficient disclosures, because sometime after he read the letter, he forwarded it to his attorney who was helping him with his debts. (Abercrombie Affidavit).

no harm." *Spokeo, supra*.

Plaintiff nonetheless maintains that RCP's alleged failure to comply with congressionally mandated disclosure requirements caused him real harm because he was deprived of important consumer protections. Again, however, plaintiff does not allege that he would have taken advantage of the consumer protections, even if he had been advised of them. Whilst an injury may be intangible, i.e., incapable of being touched or lacking physical form,[3] it still must be present, and not merely conceptual or theoretical. *See Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 530 (5th Cir.2016) ("bare allegation of improper defined-benefit-plan management under ERISA, without concomitant allegations that any defined benefits are even potentially at risk, does not meet the dictates of Article III . . .").

In *Spokeo*, the Supreme Court noted that the violation of a statutory procedural right alone, may suffice, in some circumstances, to constitute an injury-in-fact. *Spokeo, supra*. The Court cited two cases for this proposition: *Federal Election Comm'n v. Akins,* 524 U.S. 11, 20–25, 118 S.Ct. 1777 (1998) (confirming that a group of voters' inability to obtain information that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice,* 491 U.S. 440, 449, 109 S.Ct. 2558 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act constitutes a sufficiently distinct injury to provide standing to sue). *Spokeo, supra*. In *Atkins* and *Public Citizen*, however, each injury suffered was the very harm that the respective statutes were designed to protect. *Jackson, supra*.

Plaintiff also cites *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114,

---

[3] *See Black's Law Dictionary* (10th ed. 2014).

8

1121 (1982), to support his argument that an alleged violation of his statutory right to information alone suffices to support a concrete injury. In *Havens Realty*, the Supreme Court determined that a "tester" enjoyed standing to assert a claim for dissemination of false housing information under the Fair Housing Act, notwithstanding the fact that the tester had no intention of buying or renting a home. *Havens Realty, supra*. In so holding, the Court emphasized that the tester had suffered injury (discriminatory misrepresentation) in precisely the form that Congress intended the statute to guard against. *Id*.

Here, in contrast to the statutes in *Akins*, *Public Citizen*, and *Havens Realty*, the FDCPA implemented various *procedural* protections, including the § 1692g disclosure requirements, to buttress the consumer's underlying, *substantive* right to be free from debt collector abuse. *Jackson, supra*. Thus, a bare violation of any of the FDCPA's procedural disclosure requirements does not automatically equate to a finding that the consumer was an actual or potential victim of debt collector abuse. Rather, plaintiff must allege additional facts to show that RCP's alleged informational transgressions materially threatened his ability to contest an invalid or erroneous debt.[4] Abercrombie has not met this burden, despite the court's having

---

[4] In a post-*Spokeo* unpublished, per curiam, decision, the Eleventh Circuit concluded that a violation of the FDCPA's disclosure requirements resulted in injury to a consumer's "right to information" under the Act. *Church v. Accretive Health, Inc.*, ___ Fed. Appx. ____, 2016 WL 3611543 (11th Cir. July 6, 2016) (per curiam). However, the court largely based its decision on an extension of *Havens Realty* – a case that this, and other courts, finds distinguishable. *See Jackson, supra*; *see also Perry v. Columbia Recovery Grp., LLC*, Civ. Action No. 16-0191, 2016 WL 6094821, at *8 (W.D. Wash. Oct. 19, 2016); *Dolan v. Select Portfolio Servicing*, Civ. Action No. 03-3285, 2016 WL 4099109, at *7 (E.D. N.Y. Aug. 2, 2016); *Landrum v. Blackbird Enterprises, LLC*, Civ. Action No. 16-0374, 2016 WL 6075446, at *5 (S.D. Tex. Oct. 3, 2016); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511 (D.C. Cir.2016) (no cognizable Article III injury from store's statutorily proscribed request for the plaintiff-shopper's zip code where plaintiff did not assert any concrete consequence stemming from the bare procedural violation). Moreover, in a more recent *published* decision, the Eleventh Circuit affirmed a finding of no Article III

afforded him the opportunity to do so.

When, as here, the plaintiff does not enjoy standing, individually, there is no case or controversy, and the suit must be dismissed. *Levin v. Minnesota Life Ins. Co.*, Civ. Action No. 07-1330, 2008 WL 2704772, at *6 (S.D. Tex. July 7, 2008) (citing *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir.1981)); *Levin v. Minnesota Life Ins. Co.*, Civ Action No. 07-1330, 2008 WL 2704772, at *6 (S.D. Tex. July 7, 2008); Fed.R.Civ.P. 12(h)(3).

## II. Motion for Class Certification and Appointment of Counsel

Abercrombie's lack of standing also precludes him from representing a class. *Levin, supra* (citations omitted). Furthermore, in the absence of subject matter jurisdiction, the court may deny as moot plaintiff's motion for class certification and appointment of class counsel. *See Bacani v. Dep't of Veterans Affairs*, 216 F.3d 1080, 2000 WL 729363 (5th Cir.2000) (unpubl.).

### **Conclusion**

---

standing where the plaintiff alleged a bare violation of a New York law that required the timely filing of a certificate of mortgage discharge, but failed to allege any associated harm or material risk of harm. *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir.2016).
    Plaintiff also cited several post-*Spokeo* district court opinions that found concrete injuries stemming from FDCPA disclosure violations. *See Dickens v. GC Servs. Ltd. P'ship*, 16-803, 2016 WL 3917530 (M.D. Fla. July 20, 2016); *Irvine v. I.C. Sys., Inc.*, 14-01329, 2016 WL 4196812 (D. Colo. July 29, 2016); *Prindle v. Carrington Mortgage Servs., LLC*, 13-1349, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016). At minimum, however, these decisions invariably rely on *Church, supra* or the extension of *Atkins*, *Public Citizen*, and *Havens Realty* – cases that this court finds distinguishable. Accordingly, the undersigned declines to follow them.
    Finally, the court is aware that the Supreme Court in *Spokeo* did not purport to change existing law on standing. Nevertheless, it did reemphasize the need for lower courts to assure that a plaintiff alleges at least the risk of concrete injury in the context of bare violations of procedural statutes. As evidenced here, the practical effect of *Spokeo* will be to set limits on the courts' prior practice of authorizing suits for technical statutory violations that are not accompanied by concrete injury.

For the above-assigned reasons,

IT IS RECOMMENDED that the instant complaint and putative class action be DISMISSED, without prejudice, for lack of subject matter jurisdiction.  Fed.R.Civ.P. 12(h)(3).

IT IS FURTHER RECOMMENDED that the motion for class certification and appointment of class counsel [doc. # 29] filed by plaintiff Bennie R. Abercrombie be DENIED, as moot.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 22pf day of November 2016.

"

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE